UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAQUISHA SCOTT,<br><br>        Plaintiff,<br><br>    v.<br><br>SARAYA USA, INC.,<br><br>        Defendant. | Case No. 22-cv-05232-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Defendant Saraya USA, Inc. ("Saraya") moves to dismiss an amended class action complaint brought by plaintiff Laquisha Scott, who alleges that Saraya's representations that its granola and other products are "sweetened with monk fruit" or "monk fruit sweetened" are false and deceptive because they are not entirely or predominantly sweetened with monk fruit. The motion is DENIED.[1] Scott has plausibly alleged that these statements, read alongside the statements "sugar free," "no sugar added," or "zero sugar" also appearing on the products' front labels, would mislead a reasonable consumer to believe that they were solely or predominantly sweetened with monk fruit. This supports her claims under California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"). The alleged misrepresentations also support her common law fraud, breaches of warranty, and unjust enrichment claims. Because Saraya's remaining arguments are not persuasive, and notice under the CLRA is no longer an issue, Scott's claims may proceed as pleaded.

## BACKGROUND

Saraya manufactures, markets, and sells "Lakanto"-branded products sold in stores and

---

[1] Pursuant to Civil Local Rule 7-1(b), this motion is suitable for disposition without oral argument and the June 7, 2023, hearing is VACATED.

online. First Am. Compl. ("FAC") [Dkt. No. 27] ¶ 12. According to the FAC, Lakanto is "the nation's leading brand of products marketed as being sweetened with monk fruit," also known as luo han guo, "a premium fruit which consumers value given its nutritional values, lack of impact on blood sugar, antioxidant levels, and more." *Id*. ¶¶ 2, 11. The FAC alleges that "[c]onsumers seeking monk fruit products do so for a specific reason—they want solely, if not predominantly, monk fruit given its premium nature and understood benefits." *Id*. ¶ 3.

In August 2022, Scott purchased Lakanto's "No Sugar Added Keto Granola Cinnamon Almond Crunch" ("the product" or "the granola") from a grocery store in San Jose, California. *Id*. ¶ 9.[2] The front of the granola label states "no sugar added" and "sweetened with monk fruit." *See id*. ¶ 14. The FAC alleges that based on these statements, along with "consumer beliefs about monk fruit products and consumer desires in avoiding" certain sweeteners, Scott "reasonably believed that the product was solely, or at the very least predominantly, sweetened with monk fruit." *Id*. ¶ 9. In addition, the FAC alleges that consumers would understand the statements to mean that the products are solely or predominantly sweetened with monk fruit because Saraya's competitors "offer products that are advertised similarly and are actually solely sweetened with monk fruit" and Saraya itself sells "Lakanto Monkfruit Extract Drops," which are also advertised as having "zero sugar" and contain only monk fruit. *See id*. ¶¶ 19-22. "For these reasons," the FAC alleges, "consumers are aware that products can actually be sweetened solely with monk fruit, and they can reasonably believe the products are in this category." *Id*. ¶ 23.

The FAC alleges that the products are not solely or predominantly sweetened with monk fruit. *Id*. ¶ 15. Instead, they are "predominantly sweetened with erythritol," a sugar alcohol that "can lead to multiple side effects, including digestive problems, diarrhea, bloating, cramps, gas, nausea, and headaches," and that has been linked to an increased risk of heart attack and stroke. *Id*. ¶¶ 15-16. The FAC further alleges that monk fruit is less processed and "considered to be a

---

[2] Like Scott's initial complaint, although the FAC alleges that she only purchased the granola, it challenges a total of 36 Lakanto products (collectively, "the products") that are also allegedly labeled as "sweetened with monk fruit" or "monk fruit sweetened." *See* FAC ¶¶ 13-14. All of the product labels also allegedly state "sugar free," "no sugar added," or "zero sugar." *Id*. ¶ 24. Unlike the last motion to dismiss, Saraya does not contest Scott's standing to bring claims based on the other products. *See* Mot. to Dismiss ("MTD") [Dkt. No. 32] 5:3-22.

2

1   more premium sweetener than erythritol," and is "much more expensive." *Id.* ¶¶ 17-18.  Had

2   Scott been aware that the granola's representations about monk fruit were false, she allegedly

3   would not have purchased it or would have paid significantly less for it.  *Id.* ¶ 5.

4         Upon a motion from Saraya, I dismissed the claims in Scott's original complaint with leave

5   to amend.  *See* Dkt. No. 26.  She filed the FAC in March 2023, alleging the same seven claims as

6   before: violations of the CLRA, FAL, and UCL; breaches of express and implied warranty; unjust

7   enrichment; and common law fraud.  Dkt. No. 27.  Saraya again moved to dismiss.  Dkt. No. 32.

**LEGAL STANDARD**

9         Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

10  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the

11  plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell*

12  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff

13  pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for

14  the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

15  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While

16  courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient

17  to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

18        Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a

19  complaint alleges fraud.  Under Rule 9(b), to state a claim for fraud, a party must plead with

20  "particularity the circumstances constituting the fraud," and the allegations must "be specific

21  enough to give defendants notice of the particular misconduct . . . so that they can defend against

22  the charge and not just deny that they have done anything wrong."  *See Kearns v. Ford Motor Co.*,

23  567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  "Averments of fraud must be

24  accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-*

25  *Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (same).

26        In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

27  court accepts her allegations as true and draws all reasonable inferences in her favor.  *Usher v.*

28  *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to

3

accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. REASONABLE CONSUMER TEST

The UCL, CLRA, and FAL "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public." *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted and cleaned up). Such claims are governed by the "reasonable consumer test," meaning Scott must "show that members of the public are likely to be deceived" in order for them to proceed. *See id.* (citations and quotations omitted). "This requires more than a mere possibility" that the product label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citations omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. at 1228-29 (citation and quotations omitted).

The problem with the prior iteration of these claims was that Scott alleged that the phrases "sweetened with monk fruit" or "monk fruit sweetened," on their own," represent to consumers that the product is "entirely, or at the very least predominantly, sweetened with monk fruit." *See* Order Granting Mot. to Dismiss ("First MTD Order") [Dkt. No. 26] 5:6-26. But the complaint did not include any allegations supporting why a reasonable consumer would believe this based on these statements alone. *See id*. In dismissing the claims, I wrote that Scott "may be able to overcome this in an amended complaint, perhaps by adding allegations regarding the product label, packaging, or advertising, or regarding consumer beliefs about monk fruit." *Id*. at 7:13-15. I further wrote that a plausibly alleged "juxtaposition of 'sugar free' and 'no sugar added' with the accused statements may suggest to a reasonable consumer that 'sweetened with monk fruit' or 'monk fruit sweetened,' mean that the product is 'solely' or even 'predominantly' sweetened with monk fruit." *Id*. at 7:15-18.

4

Although the FAC still alleges that the statements "sweetened with monk fruit" or "monk fruit sweetened" "in isolation deceive reasonable consumers into believing that the products are solely or predominately sweetened with monk fruit," it includes new allegations. *See* FAC ¶ 24. Specifically, the FAC now alleges that the front labels of the products include the statements "sugar free," "no sugar added," or "zero sugar," which "only increase the deceptive nature of the products' labeling" because consumers see that the products are not sweetened with sugar and "only a single piece of information as to the sweetener used as an alternative": monk fruit. *Id*. The FAC further alleges that because Saraya's competitors "offer products that are advertised similarly and are actually solely sweetened with monk fruit," consumers are "aware that products can actually be sweetened solely with monk fruit, and they can reasonably believe the products are in this category." *See id*. ¶¶ 19-23.

Saraya argues that these allegations still fall short. MTD at 10:14-12:25. First, it notes that "nowhere on the label (front nor back) does it say that the product is sweetened solely or even predominately by monk fruit," nor does it "claim a specific amount of monk fruit is in the product." *Id*. at 9:22-25.[3] Saraya admits that the back of the label "contains a short passage on the discovery of monk fruit, its perceived benefits, and where Lakanto harvests its monk fruit," but notes that it also contains an ingredient list that "expressly states that the product contains 'Non GMO Lakanto Monkfruit Sweetener (Erythritol and Monk Fruit Extract).'" *Id*. at 10:2-7. Saraya argues that "the back label makes it clear that the product is sweetened with both erythritol and monk fruit." *Id*. at 10:6-7.

Turning to the sugar-related statements, Saraya argues that "no sugar added" "means just that—there is no sugar added to the product, a fact which is confirmed by the product's nutrition panel." *Id*. at 10:7-11. According to Saraya, the FAC does not sufficiently allege that a

---

[3] Saraya again proffers the front and back label of the granola, which I will consider because it is incorporated by reference into the FAC. *See* MTD, Klimkowski Decl., Ex. 1; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (stating that a document may be incorporated into a complaint if it "forms the basis of the plaintiff's claim"); *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-CV-09077-JSW, 2021 WL 3524047, at *2 (N.D. Cal. Aug. 6, 2021) ("Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the labels and the labels are central to the plaintiff's complaint.").

reasonable consumer would understand the sugar statements "to be anything more than a relative claim about the sugar content (zero) of the products versus a reflection of the amount of monk fruit in the products." *Id*. at 10:11-13.

Scott has the better argument. The statements that the products are "sweetened by monk fruit" or "monk fruit sweetened," read alongside the statements "sugar free," "no sugar added," or "zero sugar," could plausibly mislead reasonable consumers into believing that the products were entirely or predominately sweetened with monk fruit. *See Williams*, 552 F.3d at 939 n.3 (considering "the deceptive context of the packaging as a whole"); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (holding that reading a promotional mailer "as a whole" dispelled any deceptive or ambiguous statement). Scott alleges why in her amended complaint: Consumers read that the products are not sweetened with sugar and then "see only a single piece of information" about an alternative sweetener: monk fruit. *See* FAC ¶ 24. With no other sweetener mentioned on the front label, it is plausible that a reasonable consumer would believe that monk fruit was the products' sole or predominant sweetener. That the sugar and monk fruit representations both appear in large font on the representative labels, with the sugar statements made above the monk fruit statements, further support this. *See id*. ¶ 14. Although Scott's arguments about competitor products that are "advertised similarly and are actually solely sweetened with monk fruit" carry less weight in this instance, they too plausibly support that "targeted consumers"—i.e., those seeking the "premium nature and understood benefits" of monk fruit—"acting reasonably in the circumstances, could be misled." *See id*. ¶¶ 3, 20-23; *see also Becerra*, 945 F.3d at 1128-29.[4]

Saraya again notes that the ingredient list on the back of the granola states that it contains "Non GMO Lakanto Monkfruit Sweetener (Erythritol and Monk Fruit Extract)," which it contends "makes it clear that the product is sweetened with both erythritol and monk fruit." MTD at 10:4-7. Saraya is correct that if there is no affirmative misrepresentation, courts have held that "it is not reasonable for a consumer to maintain beliefs affirmatively dispelled by a product's label." *See id*.

---

[4] Saraya's fact-based arguments distinguishing these other products are better suited for a later stage of litigation. *See* MTD at 11:11-12:17.

at 7:17-24; *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (writing that under *Williams*, "*if* the defendants commit an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception") (emphasis in original).  But Scott has adequately alleged a misrepresentation on the front of the product labels.  Under *Williams*, the ingredient list on the back of the label is not enough to dispel the allegedly deceptive statements made on the front.  As the *Williams* court explained,

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

552 F.3d at 936.  The ingredient list therefore does not thwart Scott's claims.

Scott has plausibly alleged that a reasonable consumer would see the statements "sweetened with monk fruit" or "monk fruit sweetened" and, reading them alongside statements "sugar free," "no sugar added," or "zero sugar," would be misled into thinking that the product was entirely or predominantly sweetened with monk fruit.  The motion to dismiss her UCL, CLRA, and FAL claims is DENIED.

**II.   FRAUD**

To state a claim for common law fraud under California law, a plaintiff must allege: (1) a misrepresentation (such as a false representation, concealment, or nondisclosure); (2) knowledge of falsity (also known as scienter); (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Kearns*, 567 F.3d at 1126 (citations and quotations omitted).  Saraya challenges the first, second, and fourth elements.  MTD at 13:1-15:15.

Saraya argues again that Scott has not alleged an actionable misrepresentation and that even if a reasonable consumer could be misled by the statements on the label, "a common law fraudulent deception must actually be false." *Id*. at 13:8-10, 13 n.6 (citing *Nacarino v. KSF Acquisition Corp.*, No. 22-CV-04021-MMC, --- F. Supp. 3d ----, 2022 WL 17178688, at *9 (N.D. Cal. Nov. 23, 2022)).  Scott contends that all she must allege is that Saraya's "practices would mislead a reasonable consumer." Oppo. [Dkt. No. 33] 19:8-12 (citing *Sanchez v. Nurture, Inc.*,

7

United States District Court
Northern District of California

1   No. 21-CV-08566-EJD, --- F. Supp. 3d ----, 2022 WL 4097337, at *7 (N.D. Cal. Sept. 7, 2022)).

2        The essence of Scott's common law fraud claim is the same as that of her claims under California's consumer protection laws: that Saraya made false and misleading representations, by way of the statements about monk fruit, that the products were solely or predominantly sweetened with monk fruit. *See* FAC ¶¶ 87-95. The FAC expressly (and repeatedly) alleges that these statements were false and plausibly does so, as the products are allegedly "predominantly sweetened with erythritol" instead. *See id*. ¶¶ 4-5, 26-27. This is enough to support Scott's fraud claim. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (stating that the reasonable consumer standard "also applies to common law fraud" claims).

     Next, Saraya contends that the fraud claim fails because Scott does not allege scienter. MTD at 14:1-11. But even under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The FAC satisfies this requirement. It alleges that Saraya "knew or should have known" that the monk fruit representations were false and misleading. *See, e.g.,* FAC ¶¶ 26, 89, 92. It also alleges sufficient facts to plausibly support this, primarily that Saraya is "the entity responsible for the development, labeling, manufacturing, advertising, distribution and sale of the products," and thus would have known that the products were predominantly sweetened with monk fruit instead. *See id*. ¶¶ 15, 26.

     Saraya's final argument against the fraud claim returns to that ingredient label. It contends that a plaintiff cannot show justifiable or reasonable reliance on an alleged false representation "if the ability to discover the truth is no more difficult than simply turning to the other side of the label." MTD at 14:12-28. Saraya further argues that Scott "can under no circumstances prove reasonable reliance" because of the ingredient list. *See id*. at 14:22-28.

     This argument belies the point that the Ninth Circuit made in *Williams*: Reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print" elsewhere on the box. *See* 552 F.3d at 939. Although *Williams* articulated this principle in context of the reasonable consumer test, it applies here as well. *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 900 (N.D. Cal.

8

1    2012) (rejecting the argument that the plaintiffs did not allege reliance because allegedly unnatural

2    ingredients were "plainly disclosed in the ingredient list" in light of *Williams*); *Girard v. Toyota*

3    *Motor Sales, U.S.A., Inc.*, 316 Fed App'x 561, 562 (9th Cir. 2008) ("justifiable reliance cannot be

4    established if reasonable consumers would not rely on the purported misrepresentation"); *Yumul v.*

5    *Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) ("The reasonable consumer

6    standard is similar to the reasonable reliance element of common law fraud."). As a result, the

7    ingredient label on the back of the product does not impede Scott's common law fraud claim, at

8    least at this point. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020)

9    ("Whether a misrepresentation is sufficiently material to allow for an inference of reliance is

10   generally a question of fact that cannot be decided at the motion to dismiss stage.").

11   Scott has plausibly alleged a misrepresentation by Saraya, that Saraya knew that

12   misrepresentation was false, and that she reasonably relied upon it. Her common law fraud claim

13   may proceed as pleaded.

### III.    BREACH OF EXPRESS WARRANTY

15   Under section 2313 of the California Commercial Code,

16   (a) Any affirmation of fact or promise made by the seller to the buyer which relates
       to the goods and becomes part of the basis of the bargain creates an express
17     warranty that the goods shall conform to the affirmation or promise.

18   (b) Any description of the goods which is made part of the basis of the bargain
19     creates an express warranty that the goods shall conform to the description.

20   Cal. Com. Code § 2313(1)(a), (b). A plaintiff pleading a breach of express warranty claim must

21   allege facts that sufficiently show: "(1) the seller's statements constitute an affirmation of fact or

22   promise or a description of the goods; (2) the statement was part of the basis of the bargain; and

23   (3) the warranty was breached." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853 (N.D. Cal.

24   2018) (citation omitted). Courts in this District have found that statements made on a food label

25   can create an express warranty. *Id.* (citing cases).

26   Saraya's primary argument is that "[t]o constitute a warranty and be actionable, the

27   statement must be specific and unequivocal," and that the monk fruit statements "both alone and in

28   conjunction with the no sugar statement, do[] not constitute an express statement, i.e., an

9

1  unequivocal statement or promise, that the product is sweetened exclusively or predominantly by
2  monk fruit." *See* MTD at 16:7-11 (citing in part *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp.
3  3d 1172, 1199 (S.D. Cal. 2021)).

4  But, as Scott notes, "when a plaintiff has adequately alleged her consumer protection
5  claims . . . courts have regularly also found that [the] plaintiff adequately alleged her express
6  warranty claims as well." *See* Oppo. at 14:23-25; *see also Hadley v. Kellogg Sales Co.*, 273 F.
7  Supp. 3d 1052, 1095 (N.D. Cal. 2017) ("[C]ourts in this district regularly hold that stating a claim
8  under California consumer protection statutes is sufficient to state a claim for express warranty.")
9  (citing cases); *LeGrand v. Abbott Lab'ys,*, No. 22-CV-05815-TSH, --- F. Supp. 3d ----, 2023 WL
10 1819159, at *13 (N.D. Cal. Feb. 8, 2023) (finding that because the plaintiff's consumer protection
11 claims were sufficient under the reasonable consumer test, her breach of express warranty could
12 also proceed).

13 The cases that Saraya relies on are distinguishable. *See* MTD at 16:7-17:5. *Henderson v.*
14 *Gruma Corporation*, No. CV-10-04173, 2011 WL 1362188, at *1 (C.D. Cal. Apr. 11, 2011), did
15 not involve a breach of express warranty claim. The express warranty claims in *Nacarino* and
16 *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897 (N.D. Cal. 2021), involved representations about
17 precise amounts of protein and Vitamin C in the products at issue, and failed because they did not
18 amount to express statements that those amounts were found in each serving, scoop, or gummy
19 vitamin. *See Nacarino*, 2022 WL 17178688, at *7-8; *Cimoli*, 546 F. Supp. 3d at 904-07. But
20 Scott's claims do not rest on alleged misrepresentations about the specific amount of monk fruit in
21 each serving. Instead, she alleges that the statements misleadingly convey that the products are
22 entirely or predominantly sweetened with monk fruit.

23 These allegations are more akin to some of the statements at issue in *Hadley*, where the
24 plaintiff alleged that the statement "lightly sweetened" implied that the products at issue were low
25 in sugar when in fact the amount of added sugar was "excessive." *See* 273 F. Supp. 3d at 1086.
26 The Hon. Lucy H. Koh allowed the breach of express warranty claim—which relied in part on that
27 statement—to proceed, in part because the plaintiff had satisfied the reasonable consumer test.
28 *See id*. at 1095. Accepting Scott's allegations as true and drawing all reasonable inferences in her

10

favor, as I must at this point, she has adequately alleged an "an affirmation of fact or promise or a description of the goods"—that they are entirely or predominantly sweetened with monk fruit—so that her breach of express warranty claim may proceed. *See Zeiger*, 304 F. Supp. 3d at 853.[5]

### IV.   BREACH OF IMPLIED WARRANTY

Under California law, the implied warranty of merchantability can be violated if products are not "fit for the ordinary purposes for which such good are used" or do not "[c]onform to the promises or affirmations of fact made on the container or label if any." *See* Cal. Com. Code § 2314(2)(c), (f). Saraya argues that Scott's implied warranty claim fails because: (1) she has not plausibly alleged an express warranty claim; (2) she "does not allege that any of the challenged products are unfit for human consumption or do not possess even the most basic degree of fitness for human consumption"; and (3) "there cannot be an implied warranty claim that is contrary to what the label actually says," and that regardless of whether Scott looked at the ingredient list, "she does not dispute that the product is actually sweetened with monk fruit." MTD at 17:7-18:17.

The first two arguments are easily disposed of. As explained, Scott has plausibly alleged a breach of express warranty claim. And the FAC does not allege that the products are not fit for their ordinary purpose. *See* FAC ¶¶ 72-79. Instead, it alleges that they do not conform to the promises made on their labels. *See id*. "This type of implied warranty claim . . . rises and falls with her express warranty claim." *See Kennard v. Kellogg Sales Co.*, No. 21-CV-07211-WHO, 2022 WL 4241659, at *8 (N.D. Cal. Sept. 14, 2022) (citing cases). Because Scott's express warranty claim may proceed, her implied warranty claim may as well.

Saraya's final argument is also unavailing. It contends that "there cannot be an implied warranty claim that is contrary to what the label actually says," relying on a statement made in a

---

[5] It appears that Saraya again attempts to invoke the ingredient list in challenging Scott's breach of express warranty claim by analogizing to *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 818 (N.D. Cal. 2014), where the court held that the plaintiff failed to plausibly allege such a claim in part because "the full text" of an Apple hardware warranty "clearly indicates that it does not apply to software," the plaintiff did not allege any facts stemming from her iPhone's hardware, and the applicable software agreement did not provide any express warranty. *See* MTD at 15:23-16:6. The facts in *Minkler* are inapposite to those at hand.

11

1    footnote, without citing any authority, in *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532
2    F. Supp. 3d 911, 920 n.2 (C.D. Cal. 2021). *Angiano* is distinguishable. There, the plaintiffs
3    alleged that consumers would reasonably believe that beer did not contain alcohol because it was
4    labeled "non-alcoholic." *See Angiano*, 532 F. Supp. 3d at 915. But "immediately underneath"
5    that statement on the label was the statement "contains less than 0.5 percent (or .5%) alcohol by
6    volume." *See id*. at 919. In dismissing the breach of implied warranty claim, the court took note
7    of the statement about less than .5% alcohol, writing that "[i]f the label says one thing, defendants
8    cannot impliedly warrant another." *Id*. at 920 n.2.

9    Here, Scott alleges that the statements "monk fruit sweetened" and "sweetened with monk
10   fruit" amount to an "implied promise in the products' labeling that the products are solely, or at
11   the very least predominantly, sweetened with monk fruit." *See* FAC ¶ 78. Read alongside the
12   additional statements about sugar, this is plausible. Unlike the statements at issue in *Angiano*, the
13   purportedly contradictory statement is found on the ingredient list on the back of the label, not
14   immediately under the challenged statements. *See* 532 F. Supp. 3d at 919. Moreover, even if it
15   later proves out that Scott read the ingredient list and the disclosure of erythritol contradicted any
16   implied warranty that the granola was *entirely* sweetened with monk fruit, it does not foreclose an
17   implied warranty that it was *predominantly* sweetened with monk fruit, which Scott also alleges.
18   Either way, it is plausible that the products do not "[c]onform to the promises or affirmations of
19   fact made on the container or label." *See* Cal. Com. Code § 2314(2)(f).

20   The motion to dismiss Scott's implied warranty claim is DENIED.

21   **V.      UNJUST ENRICHMENT**

22   As I have previously explained, under California law "a court may construe a claim for
23   unjust enrichment as a quasi-contract claim seeking restitution." *Gagetta v. Walmart, Inc.*, No.
24   22-CV-03757-WHO, --- F. Supp. 3d ----, 2022 WL 17812924, at *10 (N.D. Cal. Dec. 19, 2022)
25   (citing cases). Saraya's sole argument against Scott's unjust enrichment claim is that it is "based
26   on the same misguided theory of consumer deception as her CLRA, FAL, and UCL claims" and
27   that because Scott "has failed to state claims under the California consumer protection statutes, the
28   unjust enrichment claim fails as well." MTD at 18:20-19:6 (citing in part *Chuang v. Dr. Pepper*

1  *Snapple Grp., Inc.*, No. CV-17-01875, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017)). But

2  Scott has sufficiently pleaded her CLRA, FAL, and UCL claims. With no other argument against

3  the unjust enrichment claim, it too may proceed.

### VI.     CLRA NOTICE

To bring a damages claim under the CLRA, a consumer must provide the defendant written notice of the "particular alleged violations" and demand that he rectify them. *See* Cal. Civ. Code § 1782(a). The consumer must do this 30 days or more prior to filing suit. *See id*.

I previously dismissed Scott's CLRA claim because she did not provide the requisite notice, primarily because the pre-suit letter was sent four months before she allegedly purchased the granola and mentioned a different product without alerting Saraya that other Lakanto products were at issue. *See* First MTD Order at 11:13-12:1. However, I gave her leave to amend—specifically, 45 days "so that she may fix the CLRA pre-suit notice issues." *See id*. at 11:28-12:5.

Scott sent Saraya a letter dated January 26, 2023, that adequately addresses these issues. *See* MTD, Rothschild Decl., Ex. 1. Saraya argues that she "cannot now, post-filing, correct her insufficient pre-suit notice letter" to include the granola and other products because "the plain language of the statute is explicit—notice is required 'prior to the commencement of an action for damages.'" MTD at 20:1-7 (citing Cal. Civ. Code § 1782(a)). But, as Saraya acknowledges, contrary authority exists. *See id*. at 20:6; *see also Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261 (2009) (failing to comply with the CLRA's notice requirement requires only that the claim "be dismissed until 30 days or more after the plaintiff complies with the notice requirements"). Courts in this District routinely dismiss CLRA claims without prejudice so that a plaintiff may provide proper notice before filing an amended complaint. *See Benipayo v. Volkswagen Grp. of Am., Inc.*, No. 15-MD-02672-CRB, 2020 WL 553884, at *7 (N.D. Cal. Feb. 4, 2020) (stating that "the typical remedy for inadequate notice" is "dismissal with leave to amend after proper notice is sent"); *see also Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at *8 (N.D. Cal. May 6, 2015). Scott filed her amended complaint on March 24, 2023, more than 30 days after sending the second notice letter, which provided Saraya sufficient notice of the alleged CLRA violation and products at issue. *See* MTD, Rothschild Decl.,

13

Ex. 1. Notice is no longer an issue with respect to the CLRA claim.

## CONCLUSION

Saraya's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: June 5, 2023



William H. Orrick
United States District Judge